UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Window World, Inc. | ) | |
| | ) | No. 12 C 4329 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| David Hampton and Window World | ) | |
| of Chicagoland, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Window World, Inc. ("Window World") brought this action June 4, 2012 against David Hampton and Window World of Chicagoland, LLC, ( "Defendants") alleging claims of trademark infringement and unfair competition under multiple sections of the Lanham Act, 15 U.S.C. § 1114(1) & § 1125(a), breach of contract, and indemnification. R. 1. Default judgment against the Defendants was entered by Judge George Lindberg on December 4, 2012. Presently before this Court is Defendants' amended motion to set aside that default judgment. R. 25. For the reasons explained below, the motion is granted.

BACKGROUND

Window World entered into multiple license agreements with David Hampton from 2005 through 2009, allowing the Defendants to sell windows and related products under the "Window World" name. On October 28 2011, Window World advised the Defendants that their relationship with Window World was in fact a franchise, and that their license agreements violated franchise registration

and disclosure laws. Window World gave the Defendants written notice to either agree to become a Window World franchisee in 35 days, or rescind the license agreements and cease operating under the Window World name. Window World's letter noted that if the Defendants decided to convert from a licensee to a franchisee, the Defendants would continue to operate under their current licensing agreement until its expiration, and would then be asked to sign a franchise agreement. *See* Case No. 12 C 579, R. 1-3 Ex. C at 1-2. The Defendants elected to enter into a franchise agreement with Window World. Window World alleges that on April 4, 2012, before any franchise agreements were executed, the Defendants abandoned their Window World business and were in default on the November 21 and December 11, 2008 license agreements that they had earlier entered into with Window World.[1]

On January 26, 2012, the Defendants filed a complaint against Window World and multiple co-defendants claiming fraud, breach of contract, and violation of the Illinois Franchise Disclosure Act ("IFDA") (the "Hampton I" complaint). *See* Case No. 12 C 579, R. 1. In that case, which was also pending before Judge Lindberg, the Defendants were represented by attorney Alice Kelly. Several amended complaints were filed. *See* Case No. 12 C 579 R. 6, 10 & 48. On April 9, 2012, Window World and its co-defendants filed a motion to dismiss the second amended Hampton I Complaint. *Id.* at R. 30.

---

[1] Only a brief recitation of the factual history between the parties, adopted here from Judge Lindberg's Memorandum Opinion in Case No. 12 C 579 and the final judgment order in the instant case, R. 19, is necessary for resolution of this motion.

On May 23, 2012, Judge Lindberg granted in part and denied in part the motion to dismiss the second amended Hampton I complaint. *Id.* at R. 46. Specifically, Judge Lindberg declined to dismiss the claims under the IFDA (Counts I-III) and the breach of contract claim (Count IV). *Id.* On May 29, 2012, the Defendants filed a third amended complaint. *Id.* at R. 48.

On June 4, 2012, Window World filed a complaint against the Defendants and additional defendants. *See* Case No. 12 C 4329, R. 1 (the "Window World" complaint). That case was initially assigned to Judge John F. Grady. On June 13, 2012, in the Hampton I case, Window World filed an unopposed motion to reassign to Judge Lindberg and consolidate its newly filed Window World complaint with the Hampton I complaint, pursuant to Federal Rule of Civil Procedure 42 and Local Rule 40.4. *See* Case No. 12 C 579, R. 49.

Although Kelly never entered an appearance for the Defendants in the Window World case, she accepted waiver of service forms from Window World counsel Scott Walton, who was also counsel for Window World during the Hampton I case, as he represented to the Court on August 14, 2013. Kelly provided the waiver form to Hampton, who signed it on June 11, 2012. R. 31 at 3; R. 25-1 Ex. A at 2; R. 30-1 at 3-4.

On June 14, 2012, the Window World case was reassigned to Judge Lindberg as it related to the Hampton I case. R. 5. The docket sheet of Hampton I reflects a June 13, 2012 minute order entry that the Window World case was reassigned to Judge Lindberg and "consolidated" with Hampton I. *See* Case No. 12 C 579, R. 51.

However, the cases apparently remained separated for purposes of notices sent out electronically by the clerk's office.

On June 25, 2012, the Defendants filed a notice of voluntary dismissal of the Hampton I complaint, which Judge Lindberg granted on July 5, 2012, construing it as a motion to dismiss. *Id.* at R. 53, 55. That same day, on June 25, 2012, Kelly sent a letter to counsel for Window World notifying them that she did not represent the Defendants in the Window World case. R. 30-2 Ex. A at 4.

On August 8, 2012, Window World made an oral motion for entry of default in the Window World case before Judge Lindberg, which he granted that day. *See* Case No. 12 C 579, R. 9. On September 26, 2012, Window World appeared before the Court with a witness to prove its damages and to testify in support of the requested injunctive relief. *Id.* at R. 10. On October 3, 2012, Window World filed a written motion for default judgment, pursuant to Federal Rule of Civil Procedure 55(b). R. 12. Kelly received no notice about any of the default proceedings related to the motion for default judgment, R. 30 Ex. 2 at 1, and Hampton never received a copy of Window World's October 3, 2012 motion for default judgment, nor was he made of the August 8, 2012 status hearing or Window World's request for a  default judgment therein. R. 25-1 Ex. A ¶¶ 19-22. On October 10, 2012, Judge Lindberg held a hearing on Window World's motion for default judgment which, as counsel for Window World represented to the Court on August 14, 2013, only counsel for Window World attended. R. 13. On December 4, 2012, Judge Lindberg entered a final judgment order in favor of Window World against the Defendants on all

counts, ordering the Defendants to pay damages in the amount of $49,763.35 and costs and expenses in the amount of $58,196.50. R. 19. Hampton never received a copy of the final judgment order. R. 25-1 Ex. A ¶ 23. This Court was assigned the Window World case on August 7, 2013, when Judge Lindberg retired. R. 24.

On June 24, 2013, the Defendants, along with additional plaintiffs, filed a second complaint against Window World and additional defendants, again asserting claims under the IFDA and breach of contract, among others. *See* Case No. 12 C 4624 (the "Hampton II" case), R.1. That case was initially assigned to the Honorable Amy St. Eve. Ms. Kelly entered an appearance as local counsel, and Jonathan Fortman, Defendants' current counsel, entered an appearance as well. *Id.* at R. 2-3.

On July 17, 2013, Hampton became aware of the default judgment in this case while reviewing the 2013 Window World Franchise Disclosure Document in which the default judgment was disclosed, and contacted his attorney who advised him that a default judgment had been entered. R. 25-1 Ex. A ¶ 25.

Twelve days later—on July 29, 2013—and nearly eight months after Judge Lindberg entered the default judgment order in this case, attorney Jonathan Fortman entered an appearance for Defendants in this case. R. 21. The same day, Defendants filed a motion to set aside the default judgment. R. 22. Before that point, the Defendants' last activity in this case was their execution of waiver of service on June 18, 2012. R. 7. On August 9, 2013, the Defendants filed an amended motion to set aside the default judgment which is presently before the Court. R. 25.

5

On August 5, 2013, Window World moved to dismiss the Hampton II complaint. *See* Case No. 12 C 4624, R. 10. Seven days later, on August 12, 2013, Defendants (and the remaining plaintiffs in the Hampton II case) moved to stay the Hampton II case. *Id.* at R. 13. On August 14, 2013, that case was reassigned to the undersigned Judge as related to this case. *Id.* at R. 19. On August 15, 2013, this Court granted Kelly's motion to withdraw as counsel in the Hampton II case. *Id.* at R. 21.

ANALYSIS

Federal Rule of Civil Procedure 60(b) allows the Court to relieve a party from final judgment in the following circumstance, among others: "(1) mistake, inadvertence, surprise, or excusable neglect." A motion for such relief "must be made within a reasonable time," after entry of a judgment, and for subsections (1) through (3), no later than one year after the entry of judgment. Fed. R. Civ. P. 60(c)(1). In order to have a default judgment vacated, the moving party must demonstrate: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012).

The Seventh Circuit allows district courts "considerable latitude" or "discretion piled on discretion," in making decisions under Rule 60. *Id.* (citing *Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996)). "It is the policy of the Seventh Circuit to favor trials on the merits over default judgments." *Colonial Penn*

*Life Ins. Co. v. Assured Enters., Ltd.*, 151 F.R.D. 91, 93 (N.D. Ill. 1993) (citing *Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 675 (7th Cir. 1987)).

The Defendants seek to set aside the default judgment in this case based upon "excusable neglect." R. 26 at 4. As Hampton asserts in his affidavit, based on emails that he received from Kelly in June and July 2012, he believed that the cases had been consolidated and dismissed. R. 25-1 Ex. A at 2-3.[2] Specifically, on June 12, 2012, Kelly sent Hampton an email stating that Window World wanted to consolidate "the new case" and "[his] current case," forwarding an email from Window World counsel which noted that Window World would be filing a motion to consolidate the cases. R. 30-1 at 6.

On June 18, 2012, Kelly sent Hampton an email stating that her firm would represent him in this case. *Id.* at 19. On June 18, 2012, Kelly also sent Hampton an email advising him of a potential conflict and stated that she did not know if she could continue to represent him "in either case under the circumstances." *Id.* at 25. On June 19, 2012, Kelly sent Hampton an email stating that her withdrawal of representation "[wa]s not a question of if but when" unless he could pay attorney's fees and costs, and that the potential conflict "could make [their] representation an issue earlier rather than sooner." *Id.* On June 24, 2012, Kelly sent Hampton an email stating that her firm would likely be filing a motion to withdraw her

---

[2]Hampton provided his written communications with Ms. Kelly to Window World attorneys and the Court, effectively waiving attorney/client privilege, which Hampton's counsel acknowledged before the Court on August 15, 2013. Hampton has made use of his communications with Ms. Kelly in seeking to have the Court vacate the default judgment.

representation the next day and would remain as his attorney until that motion was granted. *Id.* at 32. Those emails led Hampton to believe that he was represented by Kelly in both cases until Kelly was granted leave to withdraw. R. 25-1 Ex. A ¶¶ 6, 8-11.

On June 25, 2012, Hampton spoke to Kelly and decided to voluntarily dismiss the Hampton I lawsuit against Window World. R. 25-1 Ex. A ¶ 12. In an email later that day, Kelly told Hampton that she would "hold off" on filing her motion to withdraw from her representation of the Defendants in the Hampton I case since Hampton had decided to dismiss it. R. 30-1 at 33. On June 29, 2012, Kelly emailed Hampton and stated that the court had "accepted the dismissal without prejudice" and that he could "re-assert [his claims]" against the defendants "on or before June 24, 2013." R. 30-1 at 27. On July 12, 2012, Kelly emailed Hampton and stated that the dismissal was granted "as to all parties." *Id.* at 41. Hampton asserts that based on these exchanges, his understanding was that the dismissal disposed of <u>all</u> claims, including the claims in this case. R. 25-1 Ex. A ¶¶ 12-14.

Ms. Kelly never filed an appearance in this case. R. 30-2 Ex. 2 ¶ 2. Although Kelly appeared as counsel of record in the Hampton I case until it closed on July 5, 2012, she never received automatic notices in the this case before or after Judge Lindberg's June 13, 2012 minute order granting Window World's motion for reassignment and consolidation of this case with the Hampton I case. *Id* at ¶ 4.

Hampton was not aware of the default proceedings in this case. R. 25-1 Ex. A ¶¶ 19, 21-24. After his June 18, 2012 entry of waiver of service, he did not appear,

either personally or through counsel, until he became aware of the default judgment in July, 2013. R. 25-1 Ex. A ¶ 25. Hampton was not aware of the August 8, 2012 status hearing, the grant of default, Window World's October 3, 2012 motion for default judgment, or the Court's December 4, 2012 entry of final judgment. *Id.* at ¶¶ 19, 21-23. Hampton did not inform his new counsel of the default judgment when he and the additional plaintiffs initially filed the Hampton II case in June 2013, because he was not aware that it had been entered. *Id.* at ¶ 24.

Although lack of communication or attorney negligence alone typically will not qualify as excusable neglect, the Court finds that the circumstances here show sufficient good cause to vacate. Those circumstances include Hampton's perception that the cases were both consolidated and dismissed, Kelly's direct communication to Window World counsel regarding her withdrawal, and the fact that the parties present no evidence that either Hampton or Kelly received any notices related to or were aware (prior to July 17, 2013) of Window World's motion for default. Moreover, Window World counsel, who represented Window World during the Hampton I case and this case, took no steps beyond getting waiver of service to notify Hampton of the case. Window World counsel had previously contacted Kelly to provide her with the waiver forms for the Defendants for this case. Counsel knew that Kelly represented the Defendants in the Hampton I case, but, as he represented to the Court on October 15, 2013, never called Kelly and never attempted to contact

Hampton to notify them of the default proceedings after Kelly's June 25, 2012 notice to Window World counsel that she would not be representing Hampton in this case.[3]

Window World argues that the Defendants were on notice of their obligation to respond to the lawsuit in this case and on notice that Kelly did not represent them in this case. Window World argues that Hampton signed waiver of service forms which warned him that the failure to appear would result in a judgment against the Defendants. Window World also argues that correspondence between Hampton and Kelly showed Kelly was forwarding Hampton documents relating to the case, reminded Hampton of the deadline to respond to the complaint after declining representation, and suggested attorneys who could assist him in defending the case. R. 31 at 8. However, the entirety of Kelly's email communications with Hampton through June and into July of 2012 reasonably formed the basis for his mistaken belief that this case was dismissed when the Hampton I case was voluntarily dismissed. Additionally, though Window World notes that Kelly was forwarding Hampton documents related to this case in a June 25, 2012 email, by that date, Window World had not moved for a default judgment and did not do so by written motion until October 3, 2012, a time frame when Window World counsel acknowledged that it was not providing documents relating to the default to Kelly or Hampton. Additionally, Window World acknowledged that

---

[3] Window World contends that it made "efforts to enforce" the final judgment by filing a citation to discover Mr. Hampton's assets on April 29, 2013, R. 31 at 9 (citing R. 20), but Window World does not expand on the details of those efforts in its response to the Defendants' motion. In any event, Judge Lindberg entered the final judgment order nearly five months earlier, on December 4, 2012.

on June 25, 2012, Kelly sent counsel for Window World a letter saying that she was not representing defendants any more. *Id.* at 4.

The second prong of the analysis to determine whether the default judgment should be vacated requires the Defendants to show that there was quick action to correct it. *See Wehrs*, 688 F.3d at 890. The Defendants filed their motion to set aside the judgment approximately eight months after the entry of default judgment. Under the circumstances, this is within a "reasonable time" for purposes of Rule 60(c)(1). Window World presented no evidence to suggest that Hampton was aware of the default judgment until nearly eight months after its entry when Hampton read about the default judgment in the 2013 Window World Franchise Disclosure Document. R. 25-1 Ex. A ¶ 25. When Hampton discovered the judgment, he promptly filed his initial motion to set aside the judgment roughly two weeks later.

Finally, the Court also finds that the Defendants have sufficiently asserted a meritorious defense. A meritorious defense must at least "raise[ ] a serious question regarding the propriety of a default judgment and . . . [be] supported by a developed legal and factual basis." *Wehrs*, 688 F.3d at 890 (quoting *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)). Window World asserts claims, among others, for breach of the license agreements that it entered into with the Defendants in 2008, and failure to comply with certain post-termination obligations under those agreements. R. 1. The Defendants assert that the fact the Hampton I IFDA claims survived Window World's motion to dismiss shows they have a meritorious defense in this case. R. 26 at 7. They point out that Judge Lindberg noted in his Memorandum Opinion and

Order in Hampton I, R. 46, potential omission of language in the October 28, 2011 rescission letter that Window World sent to the Defendants may have failed to comply with the IFDA. *See* Case No. 11 C 579, R. at 4-5. The Defendants contend that this provides them with a claim for rescission of the license agreements that Window World alleges they have breached in this case.[4] This assertion is sufficient to meet the Defendants' burden of showing a meritorious defense for purposes of vacating a default judgment.

Additionally, the Court is not persuaded that the potential prejudice to Window World outweighs the factors in support of vacating the default judgment. At an October 15, 2013 status hearing before the Court, Window World represented that it would be prejudiced by such a ruling because it would have to undertake a legal analysis to determine whether it would be considered a material change to its franchise disclosure statement. R. 32. Window World also contends that it will be unfairly prejudiced because it "disclosed the result of the litigation on its franchise disclosures filed with regulatory authorities and it—and prospective franchisees— have relied on the finality of the judgment." R. 31 at 1, 9. At the Court's request, Window World submitted its 2012 and 2013 Franchise Disclosure Documents. R. 32. Each document lists at least nine other disclosures of litigation, including cases

---

[4]Window World argues that the Defendants' IFDA claims "only survived dismissal because the pleaded facts had to be taken as true at that point." R. 31 at 10. However, the issues that Window World raises—that the Defendants rejected Window World's rescission offer and violated the IFDA by then suing Window World, that the court did not decide the statute of repose issue on the merits, and that the Defendants' IFDA claims survived dismissal because of a typo in the year listed on one of the license agreements, R. 37 at 2-3; R. 31 at 10 —do not change the Court's decision that at least a facially meritorious defense exists here.

where Window World appeared as defendant, R. 33-1 at 10-13 & 33-22 at 10-13, so inclusion of this additional case, where Window World appears as a <u>plaintiff</u> asserting claims against another party, is not particularly persuasive. Further, Window World's disclosure of the instant case notes that it resulted in a default judgment, so it does not purport to represent that the claims were decided on the merits. A default judgment in place for less than one year can, upon motion of the defaulting party, be vacated as a matter of the discretion of the court, as it is here. Moreover, the status of the voluntary dismissal without prejudice of Defendants' complaint in Hampton I is not disturbed. These factors significantly reduce any potential prejudice to Window World and do not serve as a basis to deny the motion to set aside the judgment.

## CONCLUSION

For the foregoing reasons, the Defendants' amended motion to set aside default judgment, R. 25, is granted. In light of Window World's unnecessary expenditure of time and resources in pursuing the default judgment, the Court will award Window World its costs and fees associated with seeking its default judgment and responding to this motion. Window World should submit a related petition for costs and fees to the Court for approval within 21 days. The Defendants will be permitted to file a response within ten (10) days of the Plaintiff's submission. This case and the Hampton II case (13 C 4624) will be set for a status hearing on April 30, 2014.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated:  April 1, 2014